# Exhibit A

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT OF THE COMMONWEALTH

Bristol, ss.                                   SUPERIOR COURT DEPARTMENT

PETTER MOORE TRUCKING COMPANY,
and ALEIDA TAVARES

    Plaintiff,

v.

AMAZON, INC.

    Defendant.

Civil Action No.: 2373CV00091

BRISTOL,SS SUPERIOR COURT
FILED

FEB 15 2023

JENNIFER A. SULLIVAN, ESQ.
CLERK / MAGISTRATE

## COMPLAINT

This Complaint arises from actions of Amazon, Inc. by acts of retaliation against the Plaintiffs in violation of M.G.L. c. 151B, §4 and the common law.

### Parties

1. Plaintiff, Petter Moore Trucking Company ("Petter Moore") has a principal place of business at 259 Belmont Avenue, Brockton, Massachusetts 02301.

2. Plaintiff Aleida Tavares ("Tavares") is a, individual with a primary residence at 33 Cambridge Street, Fall River, MA 02721.

3. Defendant, Amazon, Inc., is a domestic, for-profit corporation with a principal place of business located at 410 Terry Avenue, North Seattle, Washington 98109 doing business as the Amazon Relay.

4. Defendant operates and owns a warehouse, Amazon ODW9, located at 350 Bartlett Street, Marlborough, MA 01752

### Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to G.L. c. 212, § 3.

6. This Court has personal jurisdiction over Amazon because it is registered as a Foreign Limited Liability Company doing business within the Commonwealth; and because the acts and omissions giving rise to this Complaint occurred in the Commonwealth.

7. Venue is proper in this Court pursuant to G.L. c. 223, § 1, because Plaintiff Petter Moore has a principal place of business residing in the judicial district of the Superior Court for Bristol County.

### Factual Allegations

8. For over two years, Petter Moore and its owner Pedro Moreno have worked diligently to comply with all Amazon regulations and requirements and create a productive service for Amazon Relay.

9. Petter Moore has an A+ 99.9% overall score with Amazon, with a score of 100% awarded for the categories of Acceptance, App Usage, and Disruption-Free, and an 99.9% in On Time.

10. To achieve this score, Mr. Moreno has worked with his five drivers to foster diligence and excellent, and an awareness of the importance of following protocol.

11. At the Northborough delivery location, coded OWD9 ("OWD9"), the supervisors have established a pattern of asking Petter Moore's drivers to provide extra work that that facility should be providing.

12. Chiefly, they have asked Petter Moore's drivers to drive an empty trailer to a different location.

13. This activity, "Rail Empty Positioning" ("RER") requires approval from the Relay Operations Center ("ROC") and the issuance of a dispatch for the activity to be carried out.

14. This process protects the driver from stealing an Amazon truck and ensures that the driver is paid for that work.

15. However, OWD9 has consistently demanded that Petter Moore drivers complete this activity without a code – essentially for free.

16. However, Mr. Moreno required his drivers to comply with Amazon regulations and the Amazon Relay Program Policies and Overview, and therefore he refused to allow them to reposition trailers with approval from Amazon.

17. On the night of December 31, 2021, one of Petter Moore's drivers, Aleida Tavares – who is also Petter Moore's only female driver – reported to OWD9 after delivering a trailer to Revere.

18. When she checked in, Ms. Tavares was instructed by the male supervisor at ODW9 to take the empty trailer offsite.

19. Ms. Tavares had completed her delivery and had not been issued a new dispatch by Amazon.

20. Just as she had previously, Ms. Tavares call her supervisor, Mr. Moreno.

21. The male supervisor at OWD9 was visibly upset and yelled at Ms. Tavares and refused to speak with Mr. Moreno or with ROC on her phone.

22. On a three-way call, ROC agreed with Mr. Moreno that Ms. Tavares needed a code to transfer that trailer.

23. After she received a code Ms. Tavares delivered the trailer without further issue or delay.

24. The next day however, it became clear that the male supervisor at OWD9 had lied about Ms. Tavares and had gotten her banned from working for Amazon.

25. Mr. Moreno received an email communication claiming that Ms. Tavares had cursed, had escalated the situation, and had spit.

26. Mr. Moreno knew that none of this was true because he had been on the phone with Ms. Tavares the whole time.

27. This was especially outlandish where Ms. Tavares was just one of several Petter Moore drivers who had ***engaged in the same activity*** by refusing to violate Amazon regulations.

28. However, only the female employee was suspended as a result.

29. Here, no investigation was conducted into the claims, and Amazon merely adopting the male supervisor's version of the events.

30. Mr. Moreno immediately began to appeal these false claims and has worked consistently since then to clear his employee's name.

31. Then, on or about February 1, 2022, ROC called Mr. Moreno asking for a driver to complete a trip to and from OWD9.

32. The only available Petter Moore driver was Ms. Tavares.

33. Mr. Moreno notified ROC of this fact and was assured that Ms. Tavares was not banned and that there would be no problem with her making the delivery.

34. Ms. Tavares delivered the loaded trailer without issue.

35. However, upon her return to OWD9, Ms. Tavares saw, and was seen by the male supervisor who had previously reported lies about her.

36. The following day Mr. Moreno was informed that Petter Moore as a whole was banned from working for Amazon as a result of Ms. Tavares taking that delivery to and from OWD9.

37. This was especially concerning where he had received assurances from Amazon's ROC that Ms. Tavares was not banned that there would be no issue with her taking the delivery.

38. Again, despite Mr. Moreno's appeals there was no process.

39. During his ongoing appeals, Mr. Moreno was told that there is documentation from ROC that Ms. Tavares was not banned and that they were given explicit permission for that delivery on February 1, 2022.

40. To date however, all of Petter Moore has been out of work as a result of Amazon's actions.

## COUNT ONE
### Retaliation under G.L. c. 151B, § 4 (4A)
### Petter Moore v. Amazon

41. Plaintiff re-alleges and re-asserts the allegations in the above paragraphs as if fully set forth herein.

42. Under Massachusetts law, G.L. c. 151B, §4A, it is unlawful for any person, to "coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by" c. 151B.

43. Petter Moore can establish a prima facie case of retaliation since it encouraged and facilitated Ms. Tavares' stand against the discrimination she experienced at OWD9, and a as a direct result of that, Petter Moore' relationship with Amazon was terminated.

44. As a result of Defendants' retaliatory conduct, Plaintiff has suffered harm.

## COUNT TWO
### Aiding and Abetting under G.L. c. 151B, § 4 (5)
### Petter Moore v. Amazon

45. Plaintiff re-alleges and re-asserts the allegations in the above paragraphs as if fully set forth herein.

46. Under Massachusetts law, G.L. c. 151B, §4 (5), it is unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

47. Defendant aided and abetted its employee when it permitted him to discriminate against Ms. Tavares and Petter Moore, and then when Petter Moore facilitated Ms. Tavares' stand against discrimination, Defendant terminated its relationship with Petter Moore.

48. As a result of Defendants' unlawful conduct, Plaintiff has suffered harm.

## COUNT THREE
### Tortious Interference
### Petter Moore v. Amazon

49. Plaintiff re-alleges and re-asserts the allegations in the above paragraphs as if fully set forth herein.

50. Plaintiff Petter Moore had an ongoing contract with Amazon to provide services, chiefly trucking.

51. Amazon was aware of the contract with Petter Moore and routinely provided jobs to Petter Moore to complete.

52. After Petter Moore supported its employee Ms. Tavares in her dispute with Amazon, Amazon stopped doing business with Petter Moore.

53. Amazon told Petter Moore that Ms. Tavares could work again on February 1, 2022.

54. Thereafter, Amazon banned all of Petter Moore from working with Amazon despite its previous assurances to Petter Moore that Ms. Tavares could take that job.

55. As a result of Amazon ending its contract with Petter Moore, it has lost considerable business.

## COUNT FOUR
### Tortious Interference
### Aleida Tavares v. Amazon

56. Tavares re-alleges and re-asserts the allegations in the above paragraphs as if fully set forth herein.

57. Tavaraes was an employee of Petter Moore and almost exclusively provided trucking services for Amazon locations.

58. After Tavares refused to violate Amazon policy, Amazon banned her form its job sites.

59. Other employees who also protested the same policies were not banned.

60. Amazon told Petter Moore that Tavares could work again on February 1, 2022.

61. Thereafter, Amazon banned all of Petter Moore from working with Amazon despite its previous assurances to Petter Moore that Tavares could take that job.

62. As a result of Amazon banning Tavares, she has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request:

1. Damages in an amount to be determined at hearing including damages for lost pay, out-of-pocket expenses and other monetary losses;

2. Costs and attorneys' fees; and

3. Such other legal or equitable relief as the Court may award.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
PETTER MOORE TRUCKING
COMPANY, and ALEIDA TAVARES
By its counsel:

_/s/ Elijah Bresley_
Elijah Bresley (BBO#691092)
ebresley@slnlaw.com
slnlaw llc
46 South Main Street
Sharon, MA 02067
Tel: 781-327-1917
Fax: 781-328-1772

Dated: February 15, 2023